UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| DESMOND MARTIN, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | No. 2:15-cv-3394 |
| | : | |
| STEPHEN GLUNT; | : | |
| THE DISTRICT ATTORNEY OF THE | : | |
| COUNTY OF PHILADELPHIA; and | : | |
| THE ATTORNEY GENERAL OF THE | : | |
| STATE OF PENNSYLVANIA, | : | |
| Respondents. | : | |

_____

# O P I N I O N
**Report and Recommendation, ECF No. 20 – Adopted**

**Joseph F. Leeson, Jr.**                                        **April 3, 2018**
**United States District Judge**

## I.      INTRODUCTION

Petitioner Desmond Martin filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging his conviction in the Philadelphia County Court of Common Pleas of

rape, robbery, burglary, theft by unlawful taking, and sexual assault. ECF No. 1. Magistrate

Judge Timothy R. Rice issued a Report and Recommendation ("R&R") recommending that the

habeas corpus claims be denied. ECF No. 20.  Petitioner has filed objections to the R&R. ECF

No. 23.  After de novo review, this Court adopts the R&R and denies habeas relief.

## II.      STANDARD OF REVIEW

### A.  R&R with objections

When objections to a report and recommendation have been filed under 28 U.S.C. §

636(b)(1)(C), the district court must make a de novo review of those portions of the report to

which specific objections are made.  28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016).  The "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1)(C).

### B.  Habeas corpus petitions under 28 U.S.C. § 2254

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  An unexhausted or procedurally defaulted claim cannot provide the basis for federal habeas relief unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *See Coleman v. Thompson*, 501 U.S. 722, 732-33, 750 (1991) (explaining that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him").  The Supreme Court has held that the ineffectiveness of counsel on collateral review may constitute "cause" to excuse a petitioner's default.  *See Trevino v. Thaler*, 133 S. Ct. 1911 (2013); *Martinez v. Ryan*, 566 U.S. 1 (2012).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562

U.S. 594, 598 (2011) (internal quotations omitted); *See also* 28 U.S.C. § 2254(d);[1] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (holding that there is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard" because the question before a federal court is not whether the state court's determination was correct, but whether the determination was unreasonable); *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) ("[I]f permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable.").  Additionally, "a federal habeas court must afford a state court's factual findings a presumption of correctness and that [] presumption applies to the factual determinations of state trial and appellate courts." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008).  The habeas petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## III.    ANALYSIS

This Court has conducted de novo review and overrules Martin's objections for the reasons discussed below and for those set forth in the R&R. This Court has conducted de novo review of all of Martin's claims, but writes separately to address only a few of his objections. *See Hill*, 655 F. App'x. at 147.

---

[1]      "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . .; or . . . resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

## A. Sufficiency of the Evidence

Martin argues that he was convicted of rape, robbery, and burglary on insufficient evidence. The United States Supreme Court has held that "a federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt." *Herrera v. Collins*. 506 U.S. 390, 401 (1993) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). However, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard "does not permit a court to make its own subjective determination of guilt or innocence." *Id*. at 320. Furthermore, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

### 1. Burglary and Robbery Convictions

Magistrate Judge Rice found that the Pennsylvania courts reasonably concluded that sufficient evidence existed to convict Martin of burglary and robbery. R&R 6-7. Martin objects that the prosecution did not prove his intent to commit a crime in the victim's home, as required to convict him of burglary. Objs. 1. *See* 18 Pa. C.S. § 3502(a) (defining burglary as entering a building "with intent to commit a crime therein."). Even assuming there was no direct evidence demonstrating Martin's intent to commit a crime in the victim's home, a jury may "draw reasonable inferences from basic facts to ultimate facts" and infer intent. *Jackson*, 443 U.S. at

319. At trial, the victim testified that Martin entered her bedroom with a weapon while she was asleep. From these facts, a jury easily could infer that Martin had the intent to commit a crime when he entered the victim's home. *See Sierra v. Montgomery*, No. EDCV1500333RKLS, 2015 WL 6549263, at *7 (finding that sufficient evidence allowed the jury to infer the intent element of burglary where defendant was caught trespassing on victim's properly, was seen near Shop-Vac even though he didn't remove it, and gave inconsistent explanations for his actions), *report and recommendation adopted*, 2015 WL 6513648 (C.D. Cal. Oct. 27, 2015).

Martin further objects to these facts themselves and argues that the evidence against him consisted primarily of the victim's testimony, even though the physical "evidence is overwhelmingly in the petitioner['s favor." Objs. 2. Martin emphasizes once again that DNA testing of the cord used to tie up the victim did not reveal his DNA, and fingerprints collected from the victim's room do not match his. *Id.* Martin effectively asks this Court to reweigh the evidence presented at trial and credit the physical evidence more than the victim's testimony. However, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The victim testified at trial that Martin appeared in her bedroom armed with a weapon, punched her in the head and raped her, and that he was neither licensed nor privileged to be inside her home—these facts allow a reasonable jury to convict Martin of burglary. Furthermore, the victim testified that after Martin raped her, he took her ATM card and coerced her into telling him her PIN number by telling her that an accomplice had a gun pointed at the back of her head—these facts allow a reasonable jury to convict Martin of robbery. Although Martin does not believe the victim was credible, the jury disagreed, and this Court may not disrupt the jury's finding. The state courts reasonably

concluded that the prosecution brought forth sufficient evidence that a reasonable jury could find Martin had committed burglary and robbery.

## 2. Rape Conviction

Magistrate Judge Rice found that Martin's sufficiency of the evidence argument with respect to his rape conviction is procedurally defaulted, as he did not present it to the state courts.[2] R&R 8. Additionally, Magistrate Judge Rice found that the claim is meritless, as sufficient evidence supported Martin's conviction for rape. *Id.* In his objections, Martin attempts to explain away various pieces of evidence that Magistrate Judge Rice identified as corroborating the prosecution's theory that Martin committed the rape: for example, Martin argues that photographs of forced entry into the victim's house actually show a door damaged when the victim's nephew had kicked it in previously. Objs. 2. Martin also argues that the anatomical location of the DNA sample collected in the rape kit suggests that the victim planted the sample herself to frame Martin. Martin's contention that this fact "better supports his version that he was framed" reveals the heart of his argument: he does not dispute the sufficiency of the evidence that he committed rape, but merely the implications of the evidence or the inferences to be drawn from it. *See Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982) (noting that insufficient evidence means that, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt but "weight of the evidence" refers to "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other").

---

[2]     Martin responds in his objections that his trial counsel was ineffective for failing to preserve this claim. Objs. 2. Regardless, this Court need not address whether the claim is procedurally defaulted because it is meritless.

Martin believes that his narrative, that he was framed, is more credible under the facts than the prosecution's, and wishes this Court to reweigh the evidence. But as discussed above, the Court may not make its own determination of the victim's credibility. Moreover, this Court cannot accept Martin's alternative explanations of the various points of evidence because it must draw all inferences in favor of the prosecution. *See Jackson*, 443 U.S. at 319. After de novo review, this Court concludes that Martin has not shown that a reasonable jury could not find that he committed rape beyond a reasonable doubt. Therefore, his objections regarding sufficiency of the evidence are overruled.

**B. *Batson* Violation**

Magistrate Judge Rice found that Martin failed to demonstrate that the trial court's decision to remedy the *Batson*[3] violation by seating one of the two improperly stricken jurors was contrary to, or an unreasonable application of, *Batson*, given the broad discretion given to trial courts to remedy *Batson* challenges. In his objections, Martin argues that his conviction should be reversed because the trial court failed to remedy the second improperly-struck juror.

Effectively, Martin complains that the trial court provided him with an inadequate remedy for the *Batson* violation. Although *Batson* requires a trial court to remedy illicit race-based peremptory strikes of jurors, the *Batson* court declined to specify what procedures a trial court should use after successful *Batson* challenges. *Batson*, 476 U.S. at 99 ("We decline, however, to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges."). Instead, the *Batson* court recognized a "variety of jury selection practices" across the various state and trial courts and chose to "make no attempt to instruct these

---

[3]      *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that, under the Equal Protection Clause, a defendant may challenge a prosecutor's striking potential jurors solely on the basis of race).

courts how best to implement our holding today," leaving the determination to the discretion of trial courts. *Id.* at 99 n.24.

Although Martin argues that he received an inadequate remedy with respect to one of the two improperly struck jurors, *Batson* does not offer a clear answer on what remedy the Constitution requires. Thus, Martin cannot show that the state court unreasonably applied clearly established federal law when it concluded that seating one juror remedied the Batson violation, and "[u]nder the explicit terms of § 2254(d)(1), therefore, relief is unauthorized." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (holding that, "[b]ecause our cases gave no clear answer to the question presented," state court did not unreasonably apply federal law such that petitioner was not entitled to habeas relief). *See also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (holding that state court's decision did not warrant habeas relief in the absence of Supreme Court holdings on the relevant issue). After de novo review, this Court finds that Magistrate Judge Rice correctly concluded that Martin cannot prevail on his *Batson* claim, and Martin's objection is overruled.

## C. Prosecutorial Misconduct

Martin argues that the prosecution violated his due process rights by failing to disclose videotapes and photographs from the night of the rape and DNA profiles for saliva samples taken from the Powerade bottle on the victim's nightstand that the victim stated her attacker drank from. Martin contends that the prosecution either knew or should have known about evidence favorable to him and material to his guilt, and thus had the duty to disclose this evidence to him under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A *Brady* violation occurs if: (1) the evidence at issue is favorable to the accused, because it is either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was "material." *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011).

1. **Photographic/Video Evidence**

Martin contends that the prosecution did not disclose videotapes and photographs that allegedly link him to the ATM machine where the victim's stolen ATM card was used. Martin bases his argument on the following exchange during his questioning by the police:

> Q. So if your pictures was [sic] on the pole camera at 1:14PM what would that mean?
>
> A. If you have footage I know it can't be me because I was not there at that time.
>
> Q. So if I had film of you using the ATM machine that would mean that all you have said was not true is that correct?

Ex. B to Pet., ECF No. 6. Martin argues that these statements referenced footage from two different cameras—the pole camera and the ATM where the victim's bank card was used—and that the prosecution withheld this evidence.

Magistrate Judge Rice rejected Martin's argument. He concluded that the record shows that the government did provide the footage from the pole camera and that, even if the government had not provided it, Martin cannot establish that the pole camera footage was favorable to his defense. R&R 12. Furthermore, Magistrate Judge Rice concluded that Martin has not proven that footage or photographs from the ATM camera even exist. *Id.* at 12-13. Martin objects and points to the entry in the police evidence log which states "video sent to DA for enhancement" as evidence that video exists. Objs. 3.

Martin still fails to establish that any video footage or photos from the ATM exist. His citations to the record seem to refer to the videos from the pole camera, not from the ATM. The police evidence log entry indicates that the video was recovered from the corner of Chew & Chelten Avenues: "Video recovered by AVU chew [sic] & Chelten Sent to DA office for enhancement." Ex. C. to Pet., ECF No. 6. This location matches the entry in the affidavit of

probable cause documenting the recovery of the footage from the pole camera: "As a result of this information the City *pole camera's film located at Chew & Chelten Aves was ascertained*, this film was viewed by a 23yr old female who identified Desmond Martin 19B/M at the ATM at the above listed times [1:14, 1:15, and 1:17AM]." Affidavit of Probable Cause dated 06/21/07, at 2. The evidence log and police investigation report contain no separate references to ATM footage or photographs. Although Martin argues that Kiera Howard, Julien Williams, and the victim were asked to identify Martin in video footage, he has not shown that the footage shown to the witnesses came from the ATM as opposed to the pole camera. Moreover, Martin cannot establish that any ATM videos or photographs would be favorable to him. In fact, he refers to the ATM video as "inconclusive" himself. Objs. 5. Therefore, Martin has no *Brady* claim based on failure to turn over ATM videos or photographs.

Nor can Martin prevail on a *Brady* claim related to the pole camera footage, because, assuming that he did not receive the footage as he asserts,[4] he cannot establish that the footage is favorable to him or material. Evidence is favorable if it is exculpatory or impeaching. *Rivera v. Pennsylvania*, 187 F. App'x 240, 245 (3d Cir. 2006) (citing *United States v. Bagley*, 473 U.S. 667, 674 (1985)). Martin has not shown that the pole camera footage is exculpatory and thus favorable: the witnesses who viewed the video either positively identified him or could not make out anyone. Julien Williams told police that he couldn't see any of the faces of the people in the video. *See* Ex. A to Pet., ECF No. 6 ("I didn't recognize any of [the people in the video] but I really can't see their faces."). Kiera Howard, whom Martin describes as a "non-credible witness

---

[4]        After de novo review, this Court agrees with Magistrate Judge Rice that Martin has not shown that the Commonwealth actually suppressed evidence from the pole camera. *See* R&R 12. Regardless, this Court addresses the favorability and materiality *Brady* requirements as they apply to the pole camera footage.

[who] fabricated her testimony" identified Martin from the video shown.[5] Reply in Support of

Pet. 7 and Ex. A, ECF No. 17. At worst, the video evidence the witnesses viewed inculpates

Martin; at best, the video evidence the witnesses viewed is neutral.[6] Martin therefore cannot

establish a *Brady* claim on the ground that the video evidence would exculpate him. *See Hicks v.*

*DiGuglielmo*, No. CIV.A. 09-4255, 2013 WL 4663266, at *4–5 (E.D. Pa. Aug. 29, 2013)

(holding that surveillance video which did not support petitioner's version of events and

implicated petitioner as the man witnesses identified as rapist was not favorable); *Carmouche v.*

*Vannoy*, No. 15-CV-2760, 2017 WL 1497618, at *2 (holding that petitioner had not stated *Brady*

claim based on prosecution's failure to turn over footage from pole camera introduced at trial

where witness could not identify petitioner in poor-quality video and detective could not identify

gender or race of figure in video), *report and recommendation adopted*, 2017 WL 1498531

(W.D. La. Apr. 24, 2017). Nor can Martin establish that the evidence is favorable on the basis of

its impeachment value, because none of the witnesses who allegedly identified him testified to

that effect at trial. In fact, Martin admits that he had never "heard or seen anything at trial

---

[5]      Exhibit A to Martin's Reply consists of a single page from a police investigation report, labeled "Page 5 of 12," with a hand-drawn arrow pointing to the first transcribed line: "A. Yes he is using the ATM and I see him walking out with the female" followed by "Q. How well do you know Desmond?" Exhibit A does not identify Kiera Howard as the interviewee, nor is it completely clear that the interviewee gave the first answer listed in response to viewing a video. Regardless, even taking Martin at his word and accepting his characterization of the exhibit, it does not support Martin's *Brady* claim because it suggests that the video evidence is inculpatory, not favorable.

[6]      Martin also asserts that the victim was shown video footage during her interview with the police, and that she, like Julien Williams, stated that she couldn't recognize anyone. Objs. 4. The Court cannot verify this assertion, because the only excerpt of the victim's police interview Martin presents does not include the statement he references, *see* Ex. B to Reply, ECF No. 17, and this Court has not found any other references to the victim's interview in the record. Regardless, like the statement of Julien Williams, the victim's alleged statement is neutral at best in terms of exculpatory value, and has no impeachment value because the victim did not testify at trial concerning any identification of Martin through video footage.

regarding any videotape . . . ." Brief in Support of Pet. 2, ECF No. 6. Martin therefore cannot establish that any video or photographic evidence allegedly withheld is favorable to him.

Martin also has failed to establish that the allegedly withheld evidence is material. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* Martin argues that he is actually innocent, and seems to suggest that the video and photographic evidence would demonstrate this fact. However, as just discussed, all references to video evidence in the record suggest that it either implicates Martin or provides no useful information. The favorable nature of any video evidence is highly speculative, which suggests that the evidence is not material. *See Rivera*, 187 F. App'x at 245 (3d Cir. 2006) ("Evidence of slight, trivial or hypothetical favorability obviously does not sway us as much in our materiality analysis as does evidence of a clearly impeaching or exculpatory nature."). In light of all the compelling evidence against him, Martin has not shown that, had the video and photographic evidence been disclosed to the defense, the result of his trial would have been different. Martin therefore has failed to establish prosecutor conduct in violation of *Brady* with respect to video and photographic evidence, and his objection is overruled with respect to those claims.

## 2. DNA Evidence from Powerade Bottle

At trial, the victim testified that her assailant drank from a Powerade bottle on her nightstand; Martin claims that saliva samples were collected from the bottle, but that the prosecution never revealed the results. Magistrate Judge Rice rejected this argument on the grounds that it is procedurally defaulted and meritless. R&R 13. Martin objects and argues that

the saliva samples should be a cause for review "because it is a key element of the allege[d] offense and may exhonorate [sic] the Petitioner." Objs. 4. He asks this Court to order the DNA testing of the samples and contends that the results would prove that he never raped the victim. *Id.*

Martin's argument more closely resembles a request for discovery, which this Court addresses below, than a *Brady* claim. Martin concedes that the prosecution did not conduct DNA tests on the saliva samples. *See* Reply 3; Objs. 4. Therefore, he bases his *Brady* claim on the idea that the prosecution had the duty to test the samples and violated his due process rights when they chose not to do so. Although the prosecution has the obligation to disclose to the defense evidence that either is exculpatory or impeachment, they are not required to use any particular investigatory tool, including quantitative testing, to secure exculpatory evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58–59 (1988); *Paddy v. Beard*, No. CIV.A. 03-5312, 2008 WL 8971156, at *19–20 (rejecting petitioner's *Brady* claim based on prosecution's decision not to test petitioner's car for decedent's blood and fingerprints, which petitioner argued would show he was not at scene of crime), *report and recommendation adopted*, 2012 WL 5881847 (E.D. Pa. Nov. 20, 2012). After de novo review, this Court agrees with Magistrate Judge Rice that Martin's *Brady* claim based on the saliva samples is meritless. Martin's objection is overruled.

### D. Illegal Sentence

Martin argues that the trial court's decision to sentence him to twenty to forty years' imprisonment violates the Eighth and Fourteenth Amendments. Magistrate Judge Rice found this argument procedurally defaulted because Martin presented it to the state court in his second PCRA petition and the state court rejected the petition as untimely. R&R 15. Furthermore, Magistrate Judge Rice found the argument meritless because Martin's sentence is not grossly

disproportionate to his crime and thus is not cruel and unusual punishment. *Id.* In his objections, Martin does not challenge the conclusion that his sentencing argument is procedurally defaulted. Instead, he argues that his sentence is disproportionate to his offense and speculates that, because the trial judge and a majority of the jury members were female, their decisions were biased, especially given the nature of his crimes. Objs. 4. Furthermore, the trial court "negated" Martin's history of non-violent offenses and did not base the sentence on the evidence presented. *Id.*

As Magistrate Judge Rice recognized, to the extent that Martin challenges the trial court's decision to impose an aggravated sentence or to depart from the sentencing guidelines, his claims implicate only state sentencing law and thus lie outside the scope of this Court's review on a petition for habeas corpus. *James v. Folino*, No. CV 07-2162, 2015 WL 5063782, at *7 (E.D. Pa. Aug. 25, 2015); *see also Wingert v. Pitkins*, No. 3:11-CV-01905, 2014 WL 7064844, at *18 (M.D. Pa. Dec. 12, 2014) (holding that state trial court's decision to exceed the sentencing guidelines does not implicate federal constitutional concerns). Instead, Martin must show that his sentence violates federal law. The Eighth Amendment does proscribe punishment "grossly disproportionate to the severity of the crime;" however, "[a]lthough the [Supreme Court's] proportionality principle applies to sentences for terms of years, only an extraordinary case will result in a constitutional violation." *United States v. Stringer*, 404 F. App'x 692, 694 (3d Cir. 2010) (internal citations omitted). In determining whether a sentence is so disproportionate that it violates the Eighth Amendment, a court must compare "the gravity of the offense" to "the harshness of the penalty." *Solem v. Helm*, 463 U.S. 277, 292 (1983). Since the decision in *Solem*, no defendant before the Supreme Court has been successful in establishing this threshold showing of gross disproportionality. *See R.R. v. Beard*, No. CIV.A. 09-1102, 2015 WL 5730784, at *51 (W.D. Pa. Sept. 30, 2015) (collecting cases). In fact, the Supreme Court has held that

terms longer than 25 years are not grossly disproportionate to certain serious felonies, even those less serious than murder. *See Ewing v. California*, 538 U.S. 11 (2003) (upholding sentence of 25 years to life for grand theft of golf clubs); *Harmelin v. Michigan*, 501 U.S. 957 (1991) (upholding sentence of life in prison without the possibility of parole for possession of cocaine).

On habeas review, the question is not whether this Court would have imposed as harsh a sentence on Martin as did the state court. Rather, the question is whether the sentence that the state court imposed on him was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court cannot answer this question in the affirmative. Martin received a sentence within the statutory maximum.[7] At sentencing, the trial judge specifically recognized that she was imposing a sentence outside the guideline range. Sentencing Transcript, N.T. 07/15/08 16:20-24. The judge justified her sentence based on the particularly egregious nature of Martin's actions:

> Rape in and of itself is a cruel and demeaning crime, you took it a step beyond. What you put the complainant through cannot be put into words on what she feels. I don't think any of us here can feel that because you did everything you did to degrade her and put her beyond fear that she had to climb out of the upstairs window to escape from the cruelty that was man set upon her. And she was a person who befriended you, who took you in when you didn't have any place else to go, so that just really exacerbates the cruelty. It's nothing anyone could imagine waking up in the middle of the night and there you were and then what you did.

N.T. 07/15/08 14:25-15:13. Given the shocking and violent nature of Martin's crime, this Court cannot conclude that the trial court imposed a sentence grossly disproportionate to his offenses. Although Martin's sentence is long, it is not unconstitutional.

---

[7]     Martin received a sentence of twenty to forty years' imprisonment. He was convicted, among other things, of rape and burglary, both of which were charged as felonies of the first degree. *See* Criminal Docket, *Commonwealth v. Martin*, No. CP-51-CR-0009280-2007. The maximum prison sentence for a felony of the first degree under Pennsylvania law is twenty years. 18 Pa. C.S. § 1103.

Martin's due process arguments alleging bias in his sentencing also fail.[8] Although Martin complains that the jury was predominantly female, the jury's composition is irrelevant because the trial judge, not the jury, sentenced Martin. *See* N.T. 07/15/08 14-16. As for his allegations of bias on the part of the trial judge, Martin offers no evidence—only accusations. At most, Martin can show that the judge ruled unfavorably to him, which does not establish judicial bias. *See Graham v. Kyler*, No. CIV.A. 01-1997, 2004 WL 875507, at *14 (E.D. Pa. Mar. 29, 2004) (finding that petitioner could not establish judicial bias in sentencing on the basis of unfounded accusations) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d. 79, 89 (Pa. 1998)).

Martin's sentence did not violate his federal constitutional rights, and his objection is overruled.

### E.  Ineffective Assistance of Counsel

#### 1. Failure to Object to Prosecutorial Misconduct (Improper Vouching)

Martin argues that his trial counsel was ineffective for failing to object to improper vouching by the prosecutor during closing argument and cites several of the prosecutor's statements, for example, that Martin was "caught lying" in his trial testimony, but that the victim's testimony had "a ring of truth to it." Magistrate Judge Rice rejected this argument because he concluded that the prosecutor's statements were permissible argument based on the evidence presented and not improper vouching, and because Martin has not shown prejudice from his counsel's failure to object. R&R 22-23. Martin objects and largely reiterates the

---

[8]      Magistrate Judge Rice correctly dismissed Martin's claim in his Reply that his sentence "was based on an 'arbitrary distinction'" as conclusory and not warranting relief. R&R 15 n.14. However, Martin's objections provide his additional arguments that the jury and trial judge harbored bias against him. The Court construes these arguments as alleging due process violations.

arguments in his petition. He contends that the prosecutor's comments were "personal beliefs and opinions" and that wrongly removed determinations of witnesses' credibility from the jury. Objs. 5.

For improper vouching to occur, a prosecutor's comments must meet two conditions: (1) the prosecutor must assure the jury that the testimony of a government witness is credible; and (2) the prosecutor must suggest that this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the trial record. *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998). Vouching can "jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury" because "the prosecutor's imprimatur may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Vitillo*, 490 F.3d 314, 327 (3d Cir. 2007) (quoting *Walker* 155 F.3d at 184), *as amended* (Aug. 10, 2007). However, a defendant cannot establish improper vouching just by asserting that the prosecutor assured the jury that a witness was credible; rather, the defendant must "identify as the basis for that comment an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record." *Walker*, 155 F. 3d at 187. When a prosecutor uses the testimony given at trial to argue that a witness testified truthfully, or points to a lack of evidence in the record to support a defendant's argument that a witness is not credible, without assuring the jury of the witness's credibility based on personal knowledge, the prosecutor is engaging in permissible argument, not vouching. *Id.*

During closing argument, Martin's counsel, who argued before the prosecution, specifically called the victim's credibility into question and implied that she had made up a "story:"

> Now, when I asked [the victim] about this on cross-examination, she states I wanted to keep everything straight, or everything in order. And I would ask you, members of the jury, if something happens to you, what do you have to keep straight? If you lived through a horrifying experience like she claimed she lived through, this isn't something that you have to keep straight. This is something that you know. When you're telling a story, however, you have to keep things straight.

Trial Transcript, N.T. 04/03/2008 (123:3-14). Martin's counsel went on to point out various alleged inconsistencies in the victim's testimony. N.T. 04/03/2008 (124-125). The statements that Martin points to as improper vouching occurred during the prosecution's response to Martin's counsel's argument about the victim's credibility on the stand. N.T. 04/03/2008 (153:22-25) ("I want to comment for a second or talk to you for a second about what defense counsel said in her comments about [the victim] and about [the victim] in general as a witness."). The prosecution attempted to bolster the victim's credibility by highlighting the detailed nature of her testimony:

> If somebody is trying to tell a lie, the details are what's missing. Because in your everyday life when you have experiences and then you go tell somebody about it, you were there. You know exactly what happened. You're able to tell them exactly what happened. What else is there when you're telling details.

> Details like when my face was in that pillow at first I prayed to my mom—her deceased mother. That's something that has what they call a ring of truth to it. Didn't just make that one up . . . . She didn't just come in here and say I was raped. She explained to you exactly what happened.

N.T. 04/03/2008 (155:18-156:13). The prosecutor then contrasted Martin's credibility during his trial testimony and pointed out various inconsistencies and "backpedaling" in Martin's testimony, telling the jury that "I think it's important that you notice when he got caught in lies when he was testifying, how he reacted."  N.T. 04/03/2008 (160-161).

The Third Circuit Court of Appeals previously has characterized similar closing arguments as proper argument, not vouching.  In *United States v. Pungitore*, 910 F.2d 1084, 1120-27 (3d Cir. 1990), the defense strategy involved attacking the credibility of two key

government witnesses: the defense counsel suggested that law enforcement had fabricated the witnesses' testimony, vigorously cross-examined the witnesses, and made their credibility the central theme of closing argument. *Id.* at 1120. In rebuttal, the prosecutor responded to the defense's argument that the witnesses had fabricated their testimony, and said: "the only way [they] got their stories together is if law enforcement told them each what to say [,] and there is nothing to indicate that happened, and it didn't happen." *Id.* at 1124. The court held that this statement was proper argument, not vouching, because the statement did not suggest that the prosecutor had access to undisclosed facts that would support the credibility of the government witnesses. *Id.* "Instead, faced with contradictory testimony regarding the preparation of its witnesses, the prosecutor urged the jury to accept the testimony most favorable to the government. This, in itself, was proper argument." *Id.* at 1125.

In *United States v. Dollson*, the defense also challenged the credibility of the key witnesses in support of the defendant's felon-in-possession charge, the arresting officers who testified that the defendant possessed a gun, by highlighting inconsistencies in the officers' testimony. 609 Fed. App'x 108, 110 (3d Cir. 2015). The defendant objected that the government committed vouching when the prosecutor said during rebuttal that, to find for the defendant, the jury "would have to believe . . . that two Philadelphia police officers came into court, stood at that stand, swore and took an oath, and then lied to [the jury] about what they saw." *Id.* at 111. The prosecutor then pointed out that the officers' stories differed because of their vantage points, and urged the jury to credit their testimony. *Id.* The Third Circuit Court of Appeals found that the prosecutor did not commit improper vouching, because "[a] prosecutor may argue in the negative that the assertions made by defense counsel that a witness is lying are not supported by the testimony in the record." *Id.* (quoting *Walker*, 155 F.3d at 187). The court concluded that "[t]he

Government here did just that, referencing the officers' testimony that they did not set out to target Dollson but happened upon the incident, detailing the inconsistencies in the officers' testimony about the incident, and asking, if the officers had contrived a story, 'wouldn't their stories be consistent?'" *Id.* at 111-12. Because the prosecutor made no assurances based on claimed personal knowledge or evidence outside the record, the statements were not impermissible vouching. *Id.* at 112.

Like the prosecutors in *Pungitore* and *Dollson*, the prosecutor in Martin's case had to respond to the defense's argument that the key prosecution witness lacked credibility. In fact, Martin's defense attorney explicitly accused the victim of "telling a story." Also like the prosecutors in *Pungitore* and *Dollson*, who used the details of their witnesses' testimony to explain why the jury should believe them, the prosecutor in Martin's case argued in favor of the victim's credibility based on the details of her testimony. The detailed account the victim presented in court, the prosecutor argued, was so unusually specific that it had a "ring of truth to it," *i.e.*, her account was too detailed to be a mere "story." With respect to Martin's testimony, the prosecutor merely pointed out occasions where Martin had been caught in an inconsistency on the witness stand, suggesting his lack of credibility. The prosecutor made no assurances of the victim's credibility or Martin's lack thereof based on claimed or implied personal knowledge or evidence not presented at trial. Instead, the prosecutor tried to reinforce the victim's credibility and attack Martin's based upon their own testimony at trial. Therefore, the prosecutor did not commit misconduct by improper vouching, and Martin's trial counsel was not ineffective for failing to object. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) (holding that counsel cannot be ineffective for failing to raise a meritless argument). Martin's objection is overruled.

### F. Remaining Objections

As mentioned above, this Court has conducted de novo review of all of Martin's claims even though they are not all specifically mentioned herein. *See Hill*, 655 F. App'x. at 147 (holding that the district courts "are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)"). Unless otherwise stated, the factual findings and conclusions of law in the R&R are adopted. All Martin's objections to the R&R are overruled.

### G. Request for Stay and/or Discovery

In his objections, Martin requests a stay of these proceedings to allow him to petition the Pennsylvania state courts for an order to run DNA tests on the sample from the Powerade bottle "unless the court can grant the DNA comparison itself." Objs. 6. The Court construes this as a request for a stay or, in the alternative, for discovery.

Rule 6 of the Rules Governing § 2254 Cases, which governs discovery requests in habeas cases, states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011). Discovery is subject to the district court's discretion, and the burden rests on the petitioner to demonstrate that there is good cause for discovery by setting forth factual allegations which, if fully developed, would entitle him to habeas relief. *Id.*

As discussed above, Martin's stated claims do not entitle him to habeas relief. Nor would DNA testing of the Powerade bottle enable him to state a constitutional claim, even if testing revealed that the DNA on the bottle is not Martin's: as discussed above, Martin has no *Brady* claim based on the Powerade bottle because the government had no obligation to test it, and the

record reveals that the government informed Martin that they had collected samples from the bottle. Martin has not alleged that his attorney was ineffective for failing to have the samples tested.[9] Nor would evidence that the DNA on the bottle is not his support any of his other constitutional claims.

Martin seems to want the DNA for testing because he claims he is actually innocent, and if the DNA test revealed that he is not the source of the DNA on the Powerade bottle, it would strengthen his claim that he was misidentified as the perpetrator. However, the Supreme Court has not yet recognized a freestanding claim of actual innocence as a basis for habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993). Even if DNA testing suggested Martin's actual innocence, it would not entitle him to habeas relief, and therefore Martin cannot show good cause for discovery on the basis of his claimed innocence alone. *See Phomma v. Delbalso*, No. CV 17-499, 2018 WL 950103, at *5 (E.D. Pa. Feb. 16, 2018) (denying discovery request premised upon claimed actual innocence); *Chambers v. Beard*, No. 3:06-CV-980, 2008 WL 7866182, at *13 (M.D. Pa. Mar. 5, 2008) ("Applying the holding of *Herrera* to the case at hand, Petitioner's allegation of actual innocence, alone, is insufficient to warrant habeas relief and thereby insufficient to establish good cause for discovery.").

Furthermore, Pennsylvania law permits a convicted defendant to petition the state court for DNA testing, *see* 42 Pa. C.S. § 9543.1 (outlining requirements for post-conviction DNA

---

[9]    Martin likely would not prevail on an ineffective assistance of counsel claim premised on counsel's failure to request DNA testing of the samples from the Powerade bottle. Courts have found counsel's decision not to obtain forensic testing of evidence reasonable where the testing carried the risk of inculpating the defendant. *See Chambers v. Beard*, No. 3:06-CV-980, 2008 WL 7866182, at *14 (M.D. Pa. Mar. 5, 2008) (denying discovery request in support of ineffective assistance claim where trial counsel's decision not to have DNA sample tested was reasonable).

testing), but Martin has not done so, which further weakens his entitlement to discovery. *See Romero v. Beard*, No. CIV.A. 08-0528, 2011 WL 3862317, at *5 (E.D. Pa. Aug. 31, 2011) ("When determining whether to exercise discretion to permit discovery in federal habeas cases, courts have taken into account any lack of diligence on the petitioner's part in developing the record in state court."). Martin has not established good cause for discovery, and his request is denied.

Lastly, Martin originally requested a stay while his second PCRA petition was pending; his second PCRA petition has since been denied. R&R 26. To the extent that Martin now requests a stay to allow him to seek DNA testing of the samples from the Powerade bottle in Pennsylvania state court, his request is denied because, as discussed above, even favorable results from the testing will not allow Martin to state a cognizable habeas claim in this court.

## H. Request for Evidentiary Hearing

Magistrate Judge Rice recommends that Martin's motion for an evidentiary hearing be denied with prejudice, suggesting that Martin is barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2) and finding that, in the alternative, Martin has failed to show an evidentiary hearing would meaningfully advance his claims. Martin objects and contends that he requested evidentiary hearings concerning his two PCRA petitions, which were denied without hearings. To determine whether it should exercise its discretion to permit an evidentiary hearing on a habeas petition, a court must evaluate (1) "whether the petition presents a prima facie showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim," and (2) whether the relevant factual allegations to be proven at the evidentiary hearing are "contravened by the existing record" or the record "otherwise precludes habeas relief." *Han Tak Lee v. Glunt*, 667 F.3d 397, 406–07 (3d Cir. 2012). As discussed above, Martin has not

presented any meritorious claim to habeas relief. He seems to suggest that an evidentiary hearing would enable him to establish his actual innocence, claiming that "a hearing would grow his claims and potentially exhonorate [sic] him or gain him relief." Objs, 6. However, as discussed in the previous section, Martin cannot obtain habeas relief on the basis of actual innocence absent a separate constitutional violation. Martin has not presented any cognizable claim of such a violation. Therefore, Martin's motion for an evidentiary hearing is denied with prejudice.

## I. Certificate of Appealability

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

For the reasons set forth herein and in the R&R, Martin has not made a substantial showing of the denial of a constitutional right, nor would jurists of reason find the Court's assessment debatable or wrong.

## IV. CONCLUSION

After de novo review of the habeas corpus petition and supporting briefs, the complete federal and state court records, the R&R, and Martin's objections to the R&R, and for the reasons set forth herein, the R&R is approved and adopted. Martin's requests for a stay, discovery, and evidentiary hearing are denied. Martin's objections to the R&R are overruled and his habeas claims are denied. A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge